**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **U.S. ex rel GRAY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 05-4201** |
| **LOCKHEED MARTIN CORPORATION** | **SECTION: B(2)** |

## ORDER AND REASONS

Before the Court is Defendant's Motion for Partial Summary Judgment as to the Retaliation Claims (Count II) asserted by Relator Jeffrey Gray (Rec. Doc. No. 144). The Motion is opposed (Rec. Doc. No. 168). A reply brief has also been filed. For reasons discussed during oral argument and for the following reasons, the Motion for Partial Summary Judgment as to the Retaliation Claim (Count II) (Rec. Doc. No. 144) is **GRANTED.**

## BACKGROUND

Gray was a nineteen year employee at Lockheed Martin Michoud Space Systems("LMMSS") (formerly Martin Marietta) at the Michoud Assembly Facility ("MAF"). He has an extensive background in nondestructive evaluation (NDE) of foam materials. He was a task leader on NDE of foam material in the late 80s after the Challenger accident. He also wrote specifications for thermal imaging equipment, which was originally intended for defect detection in foam materials. (Gray I at 271).

For the last seven years of Gray's employment at LMMSS, he worked in the research and development group of the operations

lab, under the supervision of John Spencer. (Spencer at 15,16). Mr. Spencer's educational background is a Bachelor's degree from UNO in chemistry. He reported to the chief of the laboratory, Laurie Rando. Mr. Rando reported to Ralph LeBoeuf, manager of the lab. Mr. LeBoeuf's educational background is a Bachelor's degree in biology, with no graduate work. (LeBoeuf I at 13). Gray was also educated at UNO. He has a Bachelor's degree in electrical engineering and a Master's degree in engineering, which he received in 1986. Since being terminated by LMMSS Gray has furthered his post-graduate work by achieving his PhD in engineering and applied sciences from UNO.

Gray was a subject matter expert in measurement technology at LMMSS. His areas of expertise were in dimensional measurement and diagnosis of the static and dynamic performance of tooling and measurement machines.

After the Columbia accident on January 16, 2003, Gray was assigned to be the NDE representative at the dissection of the tanks. After the accident, the existing tanks were brought back to MAF and dissected to determine if there were additional defects in the foam material. (GRAY I at 271). Wanda Sigur, Director of Engineering, LMMSS, asked Gray to invent a way to measure strain in the external tank ("ET") foam. Gray came up with the optical strain-gauge methodology.

A strain gauge is applied to material and stretches with the

material as it moves, while measuring the strain on the material. Gray believed that nearly every case in which the foam fell off the ET during take-off was a result of the inability of the foam to withstand dimensional loading, such as contraction, torsion, and/or tension that can occur during "tanking" operations. Tanking refers to filling the tank with liquid fuel prior to launch.

Lockheed Martin fired Gray in September of 2004. This was in the midst of its RTF work on the ET foam loss. Plaintiff alleges that Lockheed Martin fired its expert in this area in the middle of the task because Gray complained that the work in the lab was not being done in compliance with the contractual requirements. Prior to his firing, plaintiff had made numerous complaints about fallacious testing and reporting of false data.

This cause of action arises because Gray accuses Lockheed Martin of violating the False Claims Act ("FCA") by lying to NASA and retaliating against him. However, Defendants argue it was Gray himself who lied to NASA and retaliated against Lockheed Martin.

Defendant argues that during Gray's employment with Lockheed Martin, Gray (1) ignored NASA's and Lockheed Martin's repeated instructions that his technology was not mature or practical enough to pursue; (2) willfully violated a Stop Work Order preventing him from wasting NASA resources on his technology,

falsely recording his time on a taxpayer-funded project; (3) lied to both NASA and Lockheed Martin about his work; and (4) made a series of threats and inappropriate remarks to Lockheed Martin and NASA personnel.

**DISCUSSION**

**A. Standard of Review for Summary Judgment**

Summary judgment is available if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56. The moving party has an initial burden of demonstrating the absence of a genuine issue of material fact. *Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, 638 F.Supp.2d 692, 696 (E.D. La. 2009); *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is improper if a disputed material fact exists, which is defined as a fact that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the moving party establishes that insufficient evidence is within the record to support an essential element of the opposing party's claim, the burden shifts to the non-moving party. 638 F. Supp.2d at 693-94. The non-movant must then demonstrate that an issue of fact does exist, by identifying specific facts on the record or by submitting additional evidence. *Id.* at 694.

Summary judgment is appropriate if "no reasonable trier of fact could find for the nonmoving party." *Id.* at 693.

**B. Elements of Liability Under Unlawful Retaliation Claim**

To prevail on an FCA retaliation claim, a plaintiff must prove that (1) he engaged in behavior protected by the FCA; (2) his employer knew of his protected activity; and (3) his employer retaliated against him because of his protected activity. *Velazquez v. LandCoast Insulation, Inc.*, 2007 WL 902297 (W.D. La.) *Citing United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 235 (1st Cir. 2004).

Section 3730(h) only protects employees who have acted "in furtherance of an action" under the FCA. *Velazquez v. LandCoast Insulation, Inc.*, 2007 WL 902297 (W.D. La.) *citing United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir.1996). Although awareness of the FCA is not required, the plaintiff must be investigating matters that are calculated, or reasonably could lead to a viable FCA action. *Id.* For an FCA claim to be viable, a prima facie case must be made that (1) the employer presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the employer knew the claim was false or fraudulent. *Velazquez v. LandCoast Insulation, Inc.*, 2007 WL 902297 (W.D. La.) *citing Young-Montenay, Inc. v. United States*, 15 F.3d 1040, 1043 (Fed.Cir.1994).

5

The purpose of the FCA is to discourage fraud against the government, and the whistle blower provision is intended to encourage those with knowledge of fraud to come forward. *Robertson v. Bell Helicopter Textron. Inc*., 32 F.3d 948, 951 (5th Cir.1994). The FCA is only intended to cover instances of fraud "that might result in financial loss to the Government." *United States v. Neifert-White* Co., 390 U.S. 228, 233, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968). The FCA attaches liability not to underlying fraudulent activity, but to the "claim for payment" from the Government. *Velazquez v. LandCoast Insulation, Inc.*, 2007 WL 902297 (W.D. La.) *citing United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995).

Several district courts have held that § 3730(h) protects internal whistle blowers, i.e., employees who report their concerns to their superiors. *See e.g., Clemes v. Del Norte County Unified Sch. Dist.*, 843 F.Supp. 583, 595-96 (N.D.Cal.1994); *United States ex rel. Kent v. Aiello*, 836 F.Supp. 720, 723-24 (E .D.Cal.1993); *Neal v. Honeywell, Inc*., 826 F.Supp. 266, 269-73 (N .D.Ill.1993). In each of those cases, however, the employee told the employer that she was concerned about the company defrauding the government. Plaintiff fails to allege that he was concerned about Lockheed Martin defrauding the government before his termination. Gray learned about the FCA for the first time months after he was fired by Lockheed Martin, when he consulted a NASA official about the alleged unfairness of his termination-not any alleged fraud or

6

false claims. (Gray IV at 22-23).

There is no evidence that Gray reported any allegedly false or fraudulent claim for payment by Lockheed Martin to NASA about Lockheed Martin defrauding the Government as required under the FCA. It is clear to this Court that plaintiff has failed to establish a prima facie case of retaliation under the FCA. Accordingly, plaintiff's FCA retaliation claim must be dismissed.

**C. Gray Fails to Establish Any Element of Liability for an FCA Retaliation Claim**

**1. Gray did not engage in protected activity.**

For activity to be "protected" under the FCA, a plaintiff must have taken steps "in furtherance of" an FCA action during his employment. 31 U.S.C. § 3730(h). This means that there "must be a nexus between the protected actions that the employee takes and exposing fraud or false claims." *U.S. ex rel. Brooks v. Lockheed Martin Corp.,* 423 F.Supp. 2d 522, 530 (D. Md. 2006), aff'd, 237 F.ed Appx. 802, 803 (4th Cir. 2007)(*per curiam).*

In this case, Gray never specifically investigated or complained about any alleged false claims by Lockheed Martin. Gray's arguments center on at most the non-performance of a contractual duty or regulatory violations by Lockheed martin. However, this does not constitute protected activity under the FCA. *U.S. v. Southland Management Corp.,* 288 F.3d 665,680 (5th Cir. 2002). Gray's complaints about NASA's and Lockheed Martin's

rejection of his technology are not connected to exposing fraud or false claims against the federal government and cannot give rise to an FCA retaliation claim. *Id.*

Gray further contends that his threats of a lawsuit are proof of protected activity (Spencer, Exhibit 17 at Gray-000137). However, Gray was not threatening to bring a lawsuit under the FCA; he did not even know about the FCA, much less any false claims. (Gray III at 22-23). Gray cannot establish that he was investigating or complaining about [Lockheed Martin] making fraudulent claims to the government when he threatened to make Lockheed Martin sorry. Investigation, testimony, and litigation are protected, and none of these activities lead to Gray's discharge. *Pineda v. United Parcel Service, Inc.,* 360 F.3d 483 (5th 2004). The Court finds that Gray did not engage in protected activity under the False Claims Act.

### 2. Lockheed Martin had no knowledge of any protected activity.

A plaintiff-employee must also show that the employer knew of the investigation or complaint regarding false claims. *Robertson v. Bell Helicopter Textron, Inc.,* 32 F.3d 948, 952 (5th Cir. 1994). Without this knowledge, an employer "could not possess the retaliatory intent necessary to establish a violation of the whistle blower provision of the False Claims Act." *Id.* The employee must prove that the employer was on notice of the distinct

possibility of *qui tam* litigation. *Sealed Appellant I v. Sealed Appellee I*, 156 Fed.Appx. 630 (5th Cir. 2005)(upholding District Court's dismissal of retaliation claim under FCA for inability of Plaintiff to sufficiently allege that appellee had knowledge that appellant was engaged in protected activity or that he was fired because of such activity).

Gray, in his opposition, describes in detail his history of making threats against Lockheed Martin, but none of these threats involved allegations that he was investigating fraud or the submission of false claims to the United States. *Sealed Appellant I v. Sealed Appellee I,* 156 Fed.Appx. 630 (5th Cir. 2005). Here, Gray never informed anyone at Lockheed Martin that he was investigating false claims or pursuing an FCA lawsuit. Instead Gray complained to Lockheed Martin and NASA about job dissatisfaction. Gray contends that he informed NASA and Lockheed Martin about suppressing his technology but this is insufficient to satisfy the knowledge requirement just as it does not meet the protected activity standard. *Id.*

Gray further contends that his complaints about testing procedures and equipment calibration were notice to Lockheed Martin of an impending FCA suit. However, intra-corporate debates about optimal testing protocols cannot be equated to knowledge of litigation. Gray's allegations amount to nothing more than scientific dispute, which is not fraud. *Robertson,* 32 F.3d at

9

952);*see also Luckey v. Baxter Healthcare Corp.,* 183 F.3d 730, 733 (7th Cir. 1999).[1] The Court finds that Lockheed Martin based upon a reasonable interpretation of Gray's conduct could not have feared that Gray was contemplating taking legal action under the FCA or reporting fraud to the government.

### 3. Lockheed Martin did not discriminate against Gray because of any protected activity.

If a plaintiff-employee can show that his employer knew about this protected activity, he must then also demonstrate that he was terminated because of his protected activity under 31 U.S.C. § 3730(h). Where as here, employer is not aware of any investigation or lawsuit involving false claims when it terminates the employee, the employee can not prove this "causation" element: "Clearly, an employer can only be held responsible for discharging an employee because of the employee's actions in furtherance of a *qui tam* lawsuit if the employer knows that the employee took actions in furtherance of such a lawsuit." *Robertson v. Bell Helicopter Textron, Inc.,* 863 F.Supp. 346, 349 (N.D. Tex. 1993), aff'd 32 F.3d 948 (5th Cir. 1994).

In *Robertson v. Bell Helicopter Textron, Inc.* 32 F.3d 948 (5th

---

[1] Gray's deposition testimony highlights the principal notion that Gray is mistaking fraud for scientific disagreement. (See Smiles Exhibit 8 ("What you [Gray] are experiencing and what I tried to convey, was a difference of technical opinion."); Davis at 59 ("[T]echnical people had fully listed to what [Gray] had to say and they based their conclusion on a technical basis ..."); Smiles at 23 (explaining that the "independent Assessments that were done" simply disagreed with Mr. Gray's conclusions–it was just a "difference of opinion.").)

Cir. 1994), after reviewing the record, the Fifth Circuit agreed with the district court that Robertson "did nothing to rebut his supervisors' testimony regarding their lack of knowledge that he was conducting investigations outside the scope of his job responsibilities in furtherance of a *qui tam* action." *Id.* All of Robertson's supervisors testified that they had no knowledge of any activity by Robertson in furtherance of a *qui tam* investigation. Moreover, Robertson conceded that he kept his *qui tam* intentions to himself. *Id.*

Robertson never characterized his concerns as involving illegal, unlawful, or false-claims investigations. Thus, the record contains no evidence that Robertson expressed any concerns to his superiors other than those typically raised as part of a contract administrator's job. *Id.* Consequently, the only way Bell could have known that Robertson's activities were in furtherance of an action under the False Claims Act would have been from his conduct. *Id.* However, based on his own testimony at trial, it is clear that Robertson's actions were consistent with the performance of his duty, as a contract administrator, to substantiate requests for additional funding. *Id.*

Similarly, Gray's failure to notify Lockheed Martin of any investigation of false claims or any intent to file a *qui tam* action is fatal to his FCA retaliation claim. *Robertson,* 32 F.3d at 952. The record in this case is clear that Gray was not fired

11

by Lockheed Martin because of any protected activity. In fact, Gray in his own deposition testimony stated that he was fired based on accusations of "performing work on the RTF contract when [he] was verbally ordered not to work on the RTF contract" and for "lying circumstances...")· The reports of Lockheed Martin's ARC and ERC further demonstrate why Gray was fired: "His overall conduct, including lack of regard for supervisory direction and instructions and false statements." (Disciplinary Disposition).

The record shows that Gray lied to Sandy Coleman of NASA. Although Gray tries to explain away his lie, initially by characterizing it as "a poor choice or words" and then by parsing the various definitions of the word "offer," (Gray opposition, 17), these explanations are irrelevant. There record is clear that there is no dispute that Coleman believed that Gray had lied to her, and Coleman herself testified that a "NASA employee would have been fired for" making such a misrepresentation." (Deposition of Sandra Coleman II at 266).

Gray also admits that he disobeyed Lockheed Martin management's command that he not discuss the rejected technology. Without citation to the record, Gray tries to justify his admitted insubordination by informing the Court that he considered management's orders to be "unethical and illegal" and that he "did not respect" it. (Opposition Brief at 19). This is once again irrelevant because Gray was fired because of his insubordination.

12

(Deposition of Cheryl Alexander, Exhibit 1).

Gray further contends that "the nature of his job was to conduct investigation" and "report" fraud, (Gray III at 22-24), undermines any suggestion that he put Lockheed Martin on notice of a potential FCA action. Even taking Gray's characterization of his responsibilities as true, summary judgment is required because the record contains no evidence that Gray expressed any concerns to his superiors other than those typically raised as part of his job. *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 952 (5th Cir. 1994).

The Court finds that Gray did not engage in any protected activity, did not inform Lockheed Martin about false claims, and was fired because he disobeyed orders and lied about his work.

**D. Lockheed Martin Had Legitimate Reasons to Fire Gray**

Even if a plaintiff can establish a *prima facie* case of retaliation, the employer is still entitled to summary judgment if it can show that it had legitimate, nonretaliatory reasons for terminating the plaintiff's employment. *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 952 (5th Cir. 1994). The employer-defendant's burden is one of production only, and the employer does not have to persuade the court that it was actually motivated by the proffered reason." *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253-55 (1981).

The Court finds that Lockheed Martin has produced several clear and reasonably specific reasons for firing Gray. As documented by reports of Lockheed Martin's ARC and ERC, Gray "failed to follow specific instructions given to him" by Lockheed Martin Management, "lied to members of management" and NASA representatives "on several occasions," violated "Company rules and procedures," and "misused company assets." (Disciplinary Disposition). These reasons for firing Gray were based on interviews of Gray and third party NASA employees, were supported by substantial documentation, were corroborated by NASA, and were provided contemporaneously with Gray's termination. Moreover, Lockheed Martin only decided to fire Gray after separate investigations and/or review by –Dobbins, the ARC, and the ERC – all of whom agreed that termination was appropriate. All of these factors make Lockheed Martin's legitimate and nonretaliatory reasons for firing Gray worthy of credence.

Lockheed Martin fired Gray for insubordination and dishonesty. On August, 5, 2004, Lockheed Martin suspended Gray's employment pending an investigation into his conduct (LeBoeuf II at 151). After the investigation, Lockheed Martin's Glenwood Dobbins concluded that Gray ignored specific instructions from his superiors and lied both to members of Lockheed Martin Management and to NASA representatives on several occasions. (Lockheed Martin Investigation Disciplinary Disposition, September 8, 2004).

14

Dobbins submitted his report to Lockheed Martin's Administrative Review Committee ("ARC") which is responsible for reviewing disciplinary matters. The ARC's review resulted in more detailed findings of Gray's misconduct. Accordingly, the ARC recommended that Gray's employment with Lockheed Martin be terminated "for the above conduct and violation of Company rules and procedures." *Id.*

The ARC's recommendation was then reviewed by Lockheed Martin's Executive Review Committee. (Alexander at 14). Among the ERC's grounds for firing Gray were his dishonesty and his insubordination. Pursuant to ERC's decision, Lockheed Martin fired Gray on September 8, 2004.[2] (Coleman II at 266-68 ("We...have to depend upon people telling us the truth... a NASA employee would have been fired for doing what [Gray had] done.").

In response to these legitimate reasons, Gray has produced no evidence raising a serious doubt that Lockheed Martin had a reasonable belief as to the manifold reasons for discharging him. While Gray may believe that certain of his direct supervisors and NASA personnel were conspiring to suppress his technology and get

---

[2] One of the statements was made to a materials sciences engineer named Marissa Little to whom Gray had made comments about the cryogenic database. The conversation was with Gray and Marissa Little at Desinovich's lunchroom. According to the IG report, Gray was asked by the IG on October 6, 2004, one month after he was terminated, about a comment that he made to a co-worker that he "would make a tactical move on the lab and its databases." To that question, Gray replied that he meant that he would take this matter to whatever level necessary to get it resolved. Gray stated that he did not imply that he was going to damage any property at the MAF. (Exhibit 1 to Lockheed Martin's Reply Brief, last paragraph of October 6, 2004 interview).

him fired, none of these individuals had the authority to fire Gray. *See* Gray Response to Interrogatory #15; Gray IV at 263-65. Gray further attempts to show pretext in three ways. First, he contends that there is a mistake of fact as to whether or not he lied. Second, he admits that he was insubordinate, but argues that he was not required to comply with his employer's orders because they were unethical. And third, he suggests that his termination was motivated by his other acts of wrongdoing, as opposed to his lying and insubordination. However, none of these allegations, even if true is relevant in establishing that Lockheed Martin's reasons for firing Gray were pretext for unlawful retaliation.

The Court finds that the evidence supporting the investigations by Dobbins and the ARC, as well as ERC's independent decision to terminate Gray's employment demonstrates that Lockheed Martin reasonably and honestly believed in the proffered non-discriminatory reasons for firing Gray. Gray has produced no material evidence to the contrary, and as such his FCA retaliation claim must be dismissed. Accordingly,

Defendant's Motion for Partial Summary Judgment as to the

Retaliation Claim is **GRANTED.**

New Orleans, Louisiana this 18th day of February, 2010.

                                              UNITED STATES DISTRICT JUDGE